IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATHY MADISON,
    Plaintiff,

vs.                                                                     Case No. 08-1243-JTM

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,
    Defendant.

MEMORANDUM AND ORDER

Presently before this court is plaintiff Kathy Madison's petition for review of a final decision of the Commissioner of Social Security. (Dkt. No. 6). Madison's application for Social Security disability insurance benefits was denied on February 4, 2008, upon the determination by the Administrative Law Judge ("ALJ") that she was not disabled under sections 216(i) and 223(d) of the Social Security Act. For the following reasons, this court denies the appeal and affirms the decision of the ALJ.

On April 18, 2005, Madison protectively filed an application for disability insurance benefits, alleging she had a disability that began on March 1, 2005. The claims were denied initially on August 8, 2005, and upon reconsideration on December 1, 2005. A hearing was held on November 14, 2007. In an order dated February 4, 2008, the ALJ found the plaintiff was not disabled. On May 30, 2008, the Appeals Council denied Madison's request for review of the unfavorable decision rendering the ALJ decision the final decision of the Commissioner. Madison then timely filed a complaint with this court. (Dkt. No. 1).

Madison claims the record shows she suffers from impairments of such severity and duration as to constitute a disability within the meaning of the Social Security Act, which would entitle her to Social Security disability benefits. She was born in 1954 and claims disability due to depression, migraines, nerves, anxiety, high blood pressure, and borderline osteoporosis. (Tr. at 84). She completed high school and has worked as a bookkeeper and personal care provider. (Tr. at 85 & 90).

The ALJ concluded Madison had not engaged in substantial gainful activity subsequent to March 1, 2005. (Tr. at 18). He found Madison had the following impairments which, in combination, are "severe": affective disorder; anxiety-related disorder; opioid dependence, marijuana and methamphetamine abuse; migraine headaches; minimal to mild degenerative changes and scoliosis of the spine; episodic gastric reflux; and Morton's neuroma of the right foot, status-post bilateral ankle fractures and residual right foot pain. (Tr. at 18). He further found that Madison did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). Specifically, the ALJ found that, after careful consideration of the entire record:

> Claimant retains the residual functional capacity to perform light work except she is capable of standing or walking no more than 4 hours total throughout an 8-hour workday with normal breaks. She is limited to simple, routine work. She is further limited to jobs that require no more than superficial interaction with the general public or coworkers but otherwise retains the capacity to respond appropriately to supervisors, coworkers, and usual work situations and deal with changes in a typical work setting.

(Tr. at 19).

> The objective evidence establishes the presence of medically determinable pain-producing and other symptom-producing impairments and a nexus to claimant's allegation of symptoms; however, the objective and clinical findings do not establish that her pain alone is disabling and the record as a whole does not support the extreme degrees of pain and other symptoms and limitations she and third parties

> . . . have alleged in this claim. Further, the documentary evidence reflects multiple inconsistencies cited below that detract from their general credibility regarding the degrees of claimant's overall symptoms and limitations. Claimant's allegations, as well as those of third parties, regarding the degree of the intensity, persistence, and overall limiting effects of her symptoms and limitations, are no more than only partially credible.

(Tr. at 22).

> Claimants earnings record reveals she has an overall poor work history, even during a 29-year period prior to 2000 when she does not allege disability, with multiple successive years reflected of no earning or sparse years with minimal earnings ranging from a few hundred to a couple of thousand dollars. Such a work history suggests that she is not motivated to work, regardless of her medical condition.

(Tr. at 23).

> Based upon a longitudinal review of the entire record and unimpeached testimony of the impartial vocational expert, . . . considering claimant's age, education, past relevant work experience, and residual functional capacity cited above, she has been capable of making a successful adjustment to other work that exists in significant numbers in the regional and national economies.

(Tr. at 36).

This court's review is guided by the Social Security Act, which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the court must determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir.2001). Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion. *Castellano v. Sec'y of Health and Human Servs.,* 26 F.3d 1027, 1028 (10th Cir.1994); *Gossett v. Bowen,* 862 F.2d 804 (10th Cir.1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White,*

287 F .3d at 905 (quoting *Casias v. Sec'y of Health and Human Serv.,* 933 F.2d 799, 800 (10th Cir.1991)).

An individual is under a disability only if that individual can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue,* 501 F.Supp.2d 1303, 1306-07 (D.Kan.2007) (citing 42 U.S.C. § 423(d)). The impairment must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience. *Barnhart v. Walton,* 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005).

Pursuant to the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir.2004); 20 C.F .R. § 404.1520(a) (2003). The steps are followed in order, and if it is determined that the claimant is or is not disabled at a step of the evaluation process, evaluation under a subsequent step is unnecessary.

The first three steps require the Commissioner to assess whether claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether she has severe impairments, and whether the severity of her impairments meets or equals a specific list of impairments. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988). If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity (RFC), which is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e).

Upon assessing the claimant's RFC, the Commissioner can then move on to steps four and five, which require assessing whether the claimant can perform her past relevant work and whether she can generally perform other work in the national economy. *Williams,* 844 F.2d at 751. The claimant bears the burden throughout steps one through four to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter,* 245 F.3d 1182, 1184 (10th Cir .2001). The burden then shifts to the Commissioner at step five to show other jobs in the national economy that are within the claimant's capacity to perform. *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999).

In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit Court of Appeals articulated the framework for analyzing evidence of nonexertional symptoms, including pain. The relevant factors are: 1) whether the objective medical evidence establishes the claimant has a physical or mental impairment capable of producing the nonexertional limitation at issue; and 2) if so, whether a loose nexus exists between the impairment and the nonexertional limitation alleged; and, 3) if so, whether the nonexertional limitation is disabling based on all objective and subjective evidence. *Id.* at 163-65; *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Some of the factors the ALJ can consider are: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence. *See* 20 C.F.R. § 404.1529 (2008); *see also Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991). Courts have found a claimant's departure from work for reasons other

than a medical condition a significant factor for consideration. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990); *Williams v. Chater*, 923 F.Supp. 1373, 1379 (D. Kan. 1996). Conditions that are effectively controlled with medication cannot serve as a basis for disability. *See Kelly v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). A claimant's failure to follow prescribed treatment is a legitimate factor for an ALJ to consider in evaluating the validity of a claimant's subjective complaints. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

In this case, Madison argues the ALJ improperly: 1) found her not entirely credible; 2) formulated her RFC; 3) evaluated the medical opinions; and 4) found she could perform work that existed in the national economy.

With respect to her credibility, the ALJ noted Madison's earnings records revealed a poor work history for the 29-year period prior to 2000 and that she engaged in substantial gainful activity during a more than 5-year period from 2000 through February 2005 as a personal car attendant for her mother-in-law, despite her longstanding history of depression and migraines and other medically determinable impairments. (Tr. at 23 & 74). Madison's highest earnings were in 2003 and 2004, despite bilateral ankle fractures, hospitalization for evaluation of recurrent migraines, and recurrent use of psychotropic medications prescribed to treat depression and anxiety-related symptoms. (*Id.*).

Physical examinations, just prior to Madison's alleged onset date, were consistent with her demonstrated ability to perform light semi-skilled work from 2000 through February 2005. (Tr. at 24). Madison was briefly hospitalized for evaluation of her headaches, but demonstrated good response to and resolution of headaches with prescription medication, nerve block injections, and the use of a TENS unit. (Tr. at 24, 409, 425-27, 481-82, 485-86, 488-90, 520 & 757). She denied any improvement of her symptoms with a TENS unit, yet she told Dr. Bakdalieh, that her migraine

symptoms were significantly improved with prescribed medication and the unit. (Tr. at 25, 425, 486 & 779). Impairments that can be reasonably controlled by medication, treatment, or surgery are not disabling. *See Wiley v. Chater*, 967 F. Supp. 446, 451 (1997).

The ALJ found that Madison's regular activities did not support her allegations of disabling depression, frequent panic attacks, seclusion for extended periods of time, frequent and disabling migraines, and chronic pain and swelling in the right foot that she claimed greatly impeded her ability to stand and walk. (Tr. at 28). Madison testified to a wide array of daily activities, including socializing with others, using a video internet system to maintain communication with her family, and planning an extended visit to Florida in September 2005. (Tr. at 26 & 520). The ALJ also noted that while Madison testified that Wellbutrin caused memory deficits (Tr. at 788), her medical records reflected her denial of any side effects from Wellbutrin or any other medication. (Tr. at 28 & 502-03). The ALJ's credibility findings must be affirmed if supported by substantial record evidence as a whole. *See Eillison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). The ALJ articulated the inconsistencies he relied on in discrediting Madison's subjective complaints, and the record supports those inconsistencies.

Madison also claims the ALJ failed to explain how her limitations were determined. (Dkt. No. 6 at 15). The ALJ noted that the RFC assessment was consistent with the objective and clinical findings of record, Madison's repeated admissions reflected in contemporaneous treatment notes of her overall physical and mental functioning (despite her history of opioid abuse and recurrent marijuana abuse) and the evidence as a whole. (Tr. at 28). She did not retain the RFC to perform any of her past work (Tr. at 33) but a vocational expert testified and her testimony supported the ALJ's finding that Madison could perform the job of tending an injection mold machine, bench assembler,

and subassembler of electrical equipment. (Tr. at 34 &793). The record supports the ALJ's limitations given Madison's physical and mental impairments.

Next, Madison asserts that the ALJ improperly evaluated the medical opinions. (Dkt. No. 6 at 19). She claims the ALJ dismissed the opinion of her treating physician. Dr. Seglie. (Dkt. 6 at 15-18). Dr. Seglie opined that Madison was incapable of sedentary work. (Tr. at 436-37). However the ALJ determined that Dr. Seglie's assessment was inconsistent with objective and clinical findings reflected in his own treatment notes. (Tr. at 30). Dr. Seglie's opinion was inconsistent with the multiple physical examinations in which Madison repeatedly demonstrated full musculoskeletal range of motion and full and equal motor strengths. (Tr. at 29, 342-43, 444-45, 447, 482, 484-86 & 488-89). The ALJ also found Dr. Seglie's opinion was inconsistent with the opinions of other physicians of record. (Tr. at 30). An ALJ may give less weight to the opinion of a physician when it is inconsistent with the other substantial evidence in the record. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007). One example of inconsistency: Dr. Seglie opined Madison was not capable of standing or walking more than one hour total during a normal workday, but Madison's treating podiatrist, Dr. Wilde, indicated that Madison could stand and walk for four hours in a normal workday. (Tr. at 29, 434 & 466). Dr. Seglie provided no rationale to support his opinion that Madison could only sit for five hours in a workday. (Tr. at 29 & 437). A treating physician's opinion may be rejected if the physicians's conclusions are not supported by specific findings. *See White v. Barnhart*, 287 F. 3d 903, 907-08 (10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and contemporaneous examination was a legitimate factor for rejecting opinion). *See also* 20 C.F.R. 404.1527(d)(2) (2008). The ALJ properly evaluated the medical opinions and articulated adequate reasons for the weight applied.

Finally, Madison alleges the ALJ improperly found that she could perform work that existed in the national economy. (Dkt. No. 6 at 22-23). The ALJ found, based on the vocational expert's testimony and considering Madison's age, education, vocational profile, RFC, and the framework of the Medical-Vocational Guidelines, that a significant number of jobs existed in the local and national economies that she could perform. (Tr. at 36). *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.14 (2008). The vocational expert's testimony was consistent with the criteria contained in the Dictionary of Occupational Titles, except for the standing and walking limitation, for which the expert relied on professional experience and placement and evaluation of people in work and work-like settings. (Tr. at 34 & 795). The record supports the ALJ finding that Madison could perform work that existed in the national economy.

IT IS ACCORDINGLY ORDERED this 30th day of June, 2009, that the present appeal is hereby denied since the ALJ's finding is supported by substantial evidence in the record.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE